E. RICHARD BETZ AND CAROLE A. BETZ, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16698-85. Filed April 26, 1988.

---

*Peter S. Friedman,* for the petitioners.
*Carol-Lynn E. Moran,* for the respondent.

OPINION

COHEN, *Judge:* This case was heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A of the Code.[1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, *Special Trial Judge:* This case came before the Court on respondent's motion to file answer out of time. A notice of deficiency was issued to petitioners on March 28, 1985, determining a deficiency for the taxable year 1981 in the amount of $12,672. Respondent also determined additions to tax under section 6653(a)(1) in the amount of $603 and section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment. Respondent further determined that additional interest was due under section 6621(c) (formerly section 6621(d)). The petition was filed on June 10, 1985, and served on respondent on June 12, 1985.[2] No answer having been received or filed, the Court, on April 27, 1987, issued an order requiring respondent, on or before June 11, 1987, to lodge his answer together with a motion for leave. On June 8, 1987, such motion was filed and respondent's answer lodged. On June 29, 1987, petitioner's answer in opposition to respondent's motion was filed.

It is within the complete discretion of this Court in the interest of justice to allow pleadings to be made out of time. Rule 25(c); *Vermouth v. Commissioner,* 88 T.C. 1488, 1491-1492 (1987); *Ballantine v. Commissioner,* 74 T.C. 516, 520 (1980); *Dixon v. Commissioner,* 60 T.C. 802, 804 (1973);

---

[1]This case was assigned pursuant to sec. 7443A(b)(4) of the Internal Revenue Code of 1986 and Rule 180 et seq. All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]At the time of filing the petition herein, petitioners resided at Cherry Hill, New Jersey.

*Rea v. Commissioner,* 60 T.C. 717, 718 (1973); *Estate of Quirk v. Commissioner,* 60 T.C. 520, 521 (1973). Respondent argues that his failure to file a timely answer was due to inadvertence rather than willful neglect. Petitioners argue that if respondent is permitted to file his answer late (a period of approximately 22 months beyond the due date) then Rule 36 would have no real meaning. Petitioners further argue that their position will be prejudiced if the answer is allowed to be filed out of time because they will be unable to properly present their case in that witnesses and evidence may no longer be available.

We must initially decide whether respondent's failure to file timely an answer was due to willful neglect, or due to inadvertence. As to the question of willful neglect, we stated in *Vermouth v. Commissioner, supra* at 1499, that "the test is not whether the defaulting party deliberately perpetuated the default, but rather whether by some reasonable diligence on his part the default could have been avoided." Thus, we look to the circumstances of this case to see whether respondent could have, through reasonable diligence, filed a timely answer or at least discovered his omission prior to being advised by the Court on April 27, 1987.

In this regard, an evidentiary hearing was held on respondent's motion. The record reveals that an answer was prepared by someone in the Newark District Counsel's Office in late July 1985.[3] Also, a certificate of service was prepared at or about the same time. While we are satisfied that the answer and certificate of service were timely prepared, we are far less assured that they were ever mailed. The answer was never received by the Court, nor was a copy of the answer ever received by Lawrence R. Brown, Esq., of the firm of John T. Spoila & Associates, upon whom a copy of the answer was allegedly served.

Respondent did not present any direct evidence that, in fact, the answer was mailed to the Court. No testimony or

---

[3]The answer contains two sets of initials with dates following each set of initials. The first set of initials, though difficult to read, could well be EGM followed by the date of 7/26/85 and the second set of initials, is GJO, followed by a date of 8/1/85. The initials were identified by respondent's witness as those of Edward G. Martoglio and Gerald J. O'Toole, attorneys in District Counsel's Newark Office. Further, Mr. Martoglio's name appears typewritten under the "of counsel" portion of the answer while Mr. O'Toole's name appears at the signature line. The document is unsigned; however, Mr. O'Toole's name is stamped on the signature line.

affidavits were presented from the attorney who prepared and initialed the answer, the supervisor who initialed the answer, or the secretary who typed the answer and prepared it for mailing. While no evidence was presented relating to the actual processing and mailing of the answer, respondent presented the office manager (District Counsel's secretary), who testified as to normal office procedures. The witness, Ms. Kettell, testified that generally after preparation and signing of an answer, the document is given to a technician in charge of Tax Court filings. At the end of the day, the technician prepares a transmittal to the Court listing the documents mailed. A copy of the transmittal is normally retained by District Counsel's Office as a record of mailing. Furthermore, the Court normally returns the original transmittal to the District Counsel's Office reflecting receipt of the documents listed in the transmittal. While the transmittal is usually prepared by a technician, if the technician is absent a secretary will prepare the document.

The transmittal for August 1, 1985 was not presented to the Court. Ms. Kettell testified as follows:

THE COURT: And, is it the job of that technician to keep a record or a copy of the transmittal for each given day in the office?

THE WITNESS: Yes, we do.

THE COURT: And, did you specifically search for a transmittal for August 1st, 1985?

THE WITNESS: I did personally search the records for 1985. We went from June to September and there were various days but none for August 1st of '85. I don't have the housing facility to keep them neatly. They were taken out of a chronological book and just filed into an envelope and put away in a file drawer. So, it is possible it became lost or misplaced.

Ms. Kettell could not recall whether she or another employee prepared the transmittal for August 1, 1985. Furthermore, she testified that no review of the employment records was made to ascertain what employees might have been working in District Counsel's Office on or about August 1, 1985.

Thus, we are left with many unknowns in this case. While it is certainly understandable that persons' memories might lapse concerning the actual processing of the answer, respondent failed to apprise the Court as to whether he even asked those parties who, at one time, had personal

knowledge and handling of the answer, whether they had any recollection of the preparation or mailing of the document. More importantly, respondent failed to establish that he used the system that was in place to insure that documents were timely filed (or otherwise keep track of documents due to be filed). In this connection, the testimony of the secretarial supervisor was crucial. While she testified that transmittal forms identifying documents sent to the Court were prepared, the retention of these forms and record keeping were lax. Apparently, no one in respondent's office took responsibility for chronologically filing the copies of transmittal memoranda after they were sent, or for reviewing and filing the originals returned by the Court reflecting receipt. Such minimal record keeping would at least indicate that respondent complied with his own internal procedures to help assure that documents were timely filed.

Further, it appears that once a document was prepared by an attorney in District Counsel's Office and was ready for filing, all responsibility was then placed on the support staff to timely file the document. Apparently, no attorney in District Counsel's Office was assigned to review transmittals for accuracy, and ensure that the document, along with the transmittal, was timely mailed to the Court.[4]

Attorneys who practice before this Court are charged with the responsibility of observing our Rules. While efficient use of an attorney's time dictates that certain tasks be delegated to the support staff, the ultimate responsibility for "diligence" rests upon the attorney handling the matter. In this regard, respondent has not convinced us that he acted with reasonable diligence to ensure that an answer was timely filed or that a misdirected document would be discovered in a reasonable period of time.

While we recognize the difficult task the Office of Chief Counsel has in handling the huge flow of litigation, it is nevertheless our duty to apply our Rules evenhandedly. *Vermouth v. Commissioner, supra.* Accordingly, having

---

[4]There is nothing in the record to establish that *any* employee of respondent periodically reviewed transmittals received back from the Court. Such actions might have put respondent on notice that a document sent to the Court was not received by the Court.

determined that respondent failed to exercise due diligence in complying with our Rules, we must determine what sanctions, if any, are appropriate. In this regard, Rule 123(a) provides:

When any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, he may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate. The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter.

## Rule 104(c) provides:[5]

(c) Sanctions: If a party or an officer, director, or managing agent of a party or a person designated in accordance with Rule 74(b), 75(c), or 81(c) fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 75, 81, 82, 83, 84, or 90, the Court may make such orders as to the failure as are just, and among others the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of the foregoing orders or in addition thereto, the Court may treat as a contempt of the Court the failure to obey any such order, and the Court may also require the party failing to obey the order or counsel advising him, or both, to pay the reasonable expenses, including counsel's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

## In *Vermouth,* we noted that:

While the foregoing sanctions are directly applicable in matters relating to discovery, they are incorporated by reference, where appropriate, into Rule 123(a). It has been held by one Circuit Court that Rule 123(a) will be

---

[5]Rule 104(c) is adopted from rule 37(b)(2), Fed. R. Civ. P. Note to accompany Rule 104(c), 60 T.C. 1124.

applied against the Commissioner upon a finding that the Commissioner violated one of the Tax Court's Rules. *Kumpf v. Commissioner,* 682 F.2d 67, 69 (3d Cir. 1982), remanding for further proceedings an unreported order of this Court. [*Vermouth v. Commissioner, supra* at 1494.]

Before considering what sanction to impose, we believe it is appropriate to examine the prejudice to petitioners that may result from respondent's failure to comply with our Rules. See *Vermouth v. Commissioner, supra.* Petitioners argue that they have suffered prejudice in that it has become difficult to obtain witnesses and information necessary to support their position. Petitioners indicate that some of their evidence, which relates to third-party witnesses, may be difficult to reconstruct due to the lapse of time. In *Vermouth v. Commissioner,* 88 T.C. at 1496, we recognized that both parties can be prejudiced by undue delay and that vital evidence can be lost. In that case, respondent was alleging fraud. Thus, the taxpayer could not properly prepare his case until respondent filed his answer with affirmative allegations of fraud necessary to disclose to the taxpayer the basis of respondent's claim. Here, neither fraud nor any other matters requiring affirmative allegations are alleged. We do not believe that in this respect petitioners have been materially prejudiced by the late answer. Rather, respondent's determinations are set forth in the notice of deficiency. The notice of deficiency apprises petitioners as to the matters on which they must present evidence in order to prevail. Clearly, petitioners have the burden of proof on each matter at issue. Rule 142. Respondent's proposed answer is simply a general denial of the allegations of error set forth in the petition. Accordingly, we believe that regardless of respondent's failure to answer timely, petitioners reasonably could have taken steps to initiate settlement discussions, to preserve evidence which they knew was needed to support their position, to bring respondent's default to the Court's attention, or to cause the case to be set for trial.

Petitioners in their answer in opposition to respondent's motion for leave, ask that respondent's motion be denied and that the allegations set forth in the petition be deemed admitted. We believe that such a sanction would be unduly harsh in this situation. We do not believe that the interests

of justice would be served by a judgment based on allegations in the petition deemed admitted as a sanction against respondent, which may come as a windfall to petitioners. Rather, petitioners should be required to prove the merits of their case. We will, however, consider whether some other sanction is appropriate.

Respondent in this case seeks additional interest under section 6621(c). Section 6621(c) provides for payment of interest on any substantial underpayment of tax attributable to a tax-motivated transaction at the rate of 120 percent of the adjusted rate established under section 6621. In paragraph 4(d) of the petition, petitioners allege error in respondent's determination that additional interest is due under section 6621(c).

The cost of delay attributable to respondent's belated answer cannot accurately be measured. Although interest is usually regarded as compensation for delay, as indicated above, petitioners could have taken steps to accelerate a determination of this case on the merits and thereby reduced the accrual of interest. In any event, we have no jurisdiction to abate normal interest under section 6601. See, e.g., *Bowman v. United States*, 824 F.2d 528 (6th Cir. 1987); *LTV Corp. v. Commissioner*, 64 T.C. 589, 597 (1975).

Additional interest under section 6621(c), however, is intended as a sanction against taxpayers. Respondent should not be allowed to profit from a time-sensitive sanction against petitioners when respondent's conduct has caused delay and thereby increased the amount involved.

Under Rules 123(a) and 104, the Court, as a sanction, may make such orders as are just, including:

An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the party obtaining the order. [Rule 104(c)(1).]

Potential prejudice to petitioner in the form of continuing interest, and particularly additional interest under section 6621(c), is logically connected to respondent's fault. See *Vermouth v. Commissioner*, 88 T.C. at 1496. An appropriate sanction, therefore, is to deem it established that respondent erred in determining that additional interest is due under section 6621(c).

We will grant respondent's motion to file answer out of time, but will order that it be taken as established that no additional interest is due under section 6621(c).

*An appropriate order will be issued.*