JEAN-MARIE CHAPOTEAU AND MARILYN SCHNELL CHAPOTEAU, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Chapoteau v. Commissioner
Docket No. 21995-87.
United States Tax Court
T.C. Memo 1989-37; 1989 Tax Ct. Memo LEXIS 39; 56 T.C.M. (CCH) 1145; T.C.M. (RIA) 89037; January 24, 1989. Leonard Bailin, for the petitioners. Rosemarie Dever, for the respondent. WELLS
MEMORANDUM OPINION WELLS, Judge: Respondent determined the following deficiencies and additions to tax: [2]
[3] Addition to Tax, Section Year
Deficiency
6653(b)(1)
6661
1983
$ 48,017
* $ 24,161
$ 12,004
1984
51,733
* 25,867
12,933
1985
5,385
* 2,693
1,346
*40 After petitioners filed their petition, respondent filed an answer which revised the deficiencies and additions as follows: Addition to Tax, Section
Year
Deficiency
6653(b)(1)
6661
1983
$ 48,971
* $ 24,486
$ 12,243
1984
56,685
* 28,342
13,890
1985
7,045
* 3,523
1,761
Petitioners resided in Jamaica, New York, when they filed their petition. On September 6, 1988, at the call of the instant case for trial, respondent filed a motion for summary judgment. *41 That motion rests upon a series of statements deemed admitted by petitioners under Rule 90(c). On September 21, 1988, petitioners filed their "Motion to Vacate Deemed Admissions." On September 26, 1988, petitioners filed their papers in opposition to summary judgment. In an order dated September 27, 1988, we directed respondent to respond to the Motion to Vacate Deemed Admissions by October 27, 1988, and indicated that we would thereafter take whatever action we deemed appropriate. Respondent responded in a timely manner. We thus now decide the following issues: (1) whether to grant petitioners' motion under Rule 90(f) to have deemed admissions withdrawn and (2) if we decide against petitioners on the first issue, whether to grant respondent's motion for summary judgment. Motion for Withdrawal of Deemed Admissions
Petitioners have moved that the deemed admissions be withdrawn. Rule 90(f) supplies authority for petitioners' motion and states as follows: withdrawal or modification may be permitted when the presentation of the merits of the case will be subserved thereby, and *42 the party who obtained the admission fails to satisfy the Court that the withdrawal or modification will prejudice him in prosecuting his case or defense on the merits. At the outset, we note that we possess considerable discretion in deciding whether to permit withdrawal of deemed admissions. Rule 90 is based upon Rule 36 of the Federal Rules of Civil Procedure ("FRCP"). In Donavan v. Carl's Drug Company, Inc.,703 F.2d 650, 652 (2d Cir. 1983), [4] the court construed FRCP 36 as follows: Thus, the court has the power to make exceptions to the Rule only when (1) the presentation of the merits will be aided and (2) no prejudice to the party obtaining the admission will result. Because the language of the Rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule. Vesting such power in the district court is essential for Rule 36 admissions effectively to narrow issues and speed the resolution of claims. [Emphasis in original; citations omitted. *43 ] Accord Kleckner v. Glover Trucking Corp.,103 F.R.D. 553, 557 (M.D. Pa. 1984). Moreover, one treatise states, "There is force to the argument that the courts should be cautious in permitting the withdrawal or amendment of admissions." 8 Wright & Miller, Federal Practice and Procedure: Civil section 2264, p. 745 (1970). Accord 999 v. C.I.T. Corp.,776 F.2d 866, 869 (9th Cir. 1985). The first precondition to withdrawal is that "presentation of the merits" be advanced by the withdrawal. Morrison v. Commissioner,81 T.C. 644, 648 (1983). We read this precondition as requiring the moving party to indicate in his moving papers facts which tend to refute the substantive deemed admissions. By "substantive" we mean those admissions bearing on liability, as opposed to admissions regarding procedural events, such as the issuance of the statutory notice of deficiency. Although the moving party should not be required to "try" his case in order to obtain withdrawal of deemed admissions, *44 neither should he be able to obtain withdrawal by simply arguing that withdrawal will necessitate a trial and thereby subserve "presentation of the merits." In almost all cases, withdrawal of deemed admissions will prevent summary adjudication and necessitate trial. Thus, the precondition that withdrawal advance "presentation of the merits" would be a virtual dead letter if it were satisfied upon a showing that withdrawal would force a trial. We decline to interpret our Rule that way. Thus, in order to render Rule 90(f)'s language meaningful, the moving party should be required to demonstrate that a trial would serve a purpose other than delay, namely, the presentation of competing evidence. This can be accomplished by indicating facts or proposed evidence contrary to or inconsistent with those set forth in substantive deemed admissions. In the instant case, the naked assertion that the deemed admissions will be refuted will not suffice. In the instant case, we find that withdrawal of the deemed admissions would not subserve "presentation of the merits of the case," because petitioners have failed to assert any facts tending to refute the deemed admissions. First, petitioners *45 offer no explanation for deposits in their various bank accounts during the taxable years in issue. Those deposits are the basis for the deficiencies and are the subject of many of the deemed admissions. Rather, petitioner Marilyn Schnell Chapoteau's affidavit merely alleges conclusions, e.g., "the bulk of the bank deposits will be proven to be other than taxable income." She fails, however, to specify any nontaxable sources for the bank deposits. Even petitioners' papers in opposition to summary judgment fail to assert facts with respect to the bank deposits. Instead, the papers assert that summary judgment is inappropriate because the deemed admissions should be withdrawn. In fact, petitioners offer no affidavits in opposition to summary judgment other than the affidavits submitted in support of their motion for withdrawal of the deemed admissions. Those affidavits set forth only conclusions without assertion of any underlying or supporting facts. In sum, petitioners demand a trial without demonstrating that factual issues exist for decision. Petitioners' lack of cooperation with respondent is further support for our conclusion that petitioners have no evidence tending to *46 refute the deemed admissions. In a "Branerton letter" dated April 27, 1988, respondent informally requested information. Petitioners failed to respond, and, consequently, on June 3, 1988, and June 16, 1988, respondent served various formal discovery requests upon petitioners. Petitioners failed to answer interrogatories until September 20, 1988, after respondent moved for summary judgment. Meanwhile, requests for the production of documents and requests for admissions remain unanswered. Petitioners' counsel avers that he reached an "understanding" with respondent's counsel that permitted delay of responses to discovery requests until one week after respondent's delivery of documents seized from Mr. Chapoteau by the Drug Enforcement Administration ("DEA"). Respondent's counsel, however, denies any such understanding, and there is no written confirmation of an agreement. We are simply unwilling to conclude, in the face of the denial by respondent's counsel, that such an agreement exists without documentation or other independent corroboration of the agreement. In fact, petitioners have produced evidence tending to disprove such an agreement. Attached to the affidavit of *47 petitioners' counsel is a letter dated August 15, 1988, from petitioners' counsel to counsel for respondent. The letter makes no reference to an agreement extending the time in which to respond to discovery. Instead, petitioners' counsel writes, "I do request your indulgence with respect to your various requests." Presumably, the request for "indulgence" would have been unnecessary if there were an agreement. Respondent also offered proof that petitioner Jean-Marie Chapoteau had recovered some of the records seized by DEA. Attached to the affidavit of respondent's counsel is a copy of a receipt from DEA which lists "miscellaneous papers, documents and records seized from Jean-Marie Chapoteau." Thus, even if the records were necessary in order to respond to formal discovery, they apparently have been within petitioners' control. In sum, petitioners' moving papers, including those in opposition to summary judgment, fail to indicate facts tending to refute the deemed admissions, and petitioners' conduct during these proceedings confirms that petitioners lack evidence of such facts. Under the circumstances of the instant case, withdrawal of the deemed admissions would not subserve *48 presentation of the merits of petitioners' case, and we therefore deny petitioners' motion that deemed admissions be withdrawn. Our holding is buttressed by language in Rule 90(f) which requires that withdrawal or modification be denied if such action would prejudice the party who procured the admission. Here, as in Morrison v. Commissioner,81 T.C. 644, 649 (1983), respondent has prepared a motion for summary judgment in reliance upon the binding effect of the deemed admissions. Petitioners waited until September 21, 1988, to file their motion for withdrawal of the deemed admissions, although the admissions were deemed admitted on July 3 and 16, 1988, 30 days after respondent served requests upon petitioners. Dahlstrom v. Commissioner,85 T.C. 812, 819 (1985). Motion for Summary Judgment
Of deemed admissions, Rule 90(f) states, "Any matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission." Because we have denied petitioners' motion for withdrawal, the deemed *49 admissions procured by respondent under Rule 90 are conclusively established. Except where we indicate otherwise, we adopt the admissions as our own findings, and they are incorporated herein by this reference. Under Rule 121(b), summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable matters, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." See Naftel v. Commissioner,85 T.C. 527, 529 (1985); Jacklin v. Commissioner,79 T.C. 340, 341 (1982); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). The moving party bears the burden of proving that there is no genuine issue of material fact and that he should prevail on the substantive issues as a matter of law. Rule 121(b); Naftel v. Commissioner, supra at 529; Espinoza v. Commissioner, supra at 416. Rule 121 (d) admonishes that "an adverse party may not rest upon the mere allegations *50 or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." In deciding whether to grant summary judgment, we construe the pertinent material in a manner most favorable to the party against whom summary judgment is sought. Naftel v. Commissioner, supra at 529; Jacklin v. Commissioner, supra at 344; United States v. Diebold,369 U.S. 654 (1962) (construing FRCP 56, upon which Rule 121 is based). As suggested by Rule 121(b), summary judgment may be supported by deemed admissions. Doncaster v. Commissioner,77 T.C. 334, 337 (1981). In Doncaster, the affirmative allegations in respondent's answer were deemed admitted under Rule 37(c). We held that those deemed admissions warranted summary judgment upholding respondent's determination of a deficiency and an addition to tax for fraud under section 6653(b). In the instant case also, respondent has procured deemed admissions which support the deficiencies and additions to tax asserted in respondent's answer. Deemed admissions numbers 14 through *51 28 set forth, step by step, the manner in which respondent used the bank deposits method to reconstruct petitioners' income for the taxable years in issue. Deemed admission number 37 states that except where otherwise stated in the deemed admissions, "Petitioners did not receive any nontaxable or excludable income, receipts, cash or other assets." Deemed admissions numbers 24, 33, and 34 list other, miscellaneous items of unreported income, such as proceeds from the liquidation of mutual fund stock, interest, and a state tax refund. Finally, deemed admissions numbers 29 and 30 establish that the unreported income reconstructed by the bank deposits method was derived from petitioners' trade or business, subjecting them to self-employment tax. Petitioners failed to maintain adequate books and records (deemed admission number 39), and respondent was entitled to reconstruct petitioners' income. Section 446(b); Meneguzzo v. Commissioner,43 T.C. 824, 831 (1965). The bank deposits method of reconstructing income has received our repeated sanction. E.g., Nicholas v. Commissioner,70 T.C. 1057, 1064 (1978). Further, as noted, petitioners have admitted *52 that none of the cited deposits came from nontaxable sources. Because the deemed admissions establish the correctness of the deficiencies asserted by respondent in his answer, we sustain those deficiencies. [5]
With respect to the fraud addition, respondent not only bears the burden of proof but also must present clear and convincing evidence of fraud. Sec. 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). Fraud consists of the specific purpose to evade a tax believed to be owing. McGee v. Commissioner,61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). Whether fraud existed is a question of fact and is to be determined on the basis of the entire record. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). In Doncaster v. Commissioner, supra, a number of the deemed admissions supported the Commissioner's deficiency determination by setting *53 forth the failure to report dividend income and an improper charitable contribution deduction. In that case, only two of the deemed admissions spoke directly to the issue of fraud. They stated, (h) The petitioner, fraudulently, and with intent to evade tax, omitted taxable income of $ 22,195.00 from his 1976 federal income tax return. (i) A part of the underpayment of tax required to be shown on the petitioner's 1976 federal income tax return is due to fraud with intent to evade tax. In granting summary judgment in Doncaster, we rejected the notion that the foregoing deemed admissions were useless conclusions: Even if we were to take the view that, in the context of this case, the ultimate issue of fraud should not be considered a pure question of fact, it is at least a question of "the application of law to fact" and consequently is an appropriate matter for the Court to deem admitted. 77 T.C. at 337. In Dahlstrom v. Commissioner,85 T.C. 812, 821 (1985), we noted, While we have held in a different context that undenied allegations of fact stated in conclusory language will support imposition of the tax for fraud under section *54 6653(b), the undenied conclusory allegations were preceded and supported by undenied allegations of specific facts which were consistent with the conclusory allegations of fraud. In the instant case, deemed admission number 42 states, "The underpayment of tax required to be shown on petitioner Jean-Marie Chapoteau's 1983 and 1984 tax returns and on both petitioners' 1985 joint tax return was due to fraud." Deemed admission number 56 states "Petitioners fraudulently and with intent to evade tax did not report any income received by them from the business of narcotics trafficking on their tax returns for tax years 1983, 1984 and 1985." In support of the foregoing conclusions, other deemed admissions cite petitioners' failure to maintain or produce records (deemed admission number 39), petitioners' use of bank accounts under the name of Chantal Chapoteau, petitioner Jean-Marie Chapoteau's daughter, to conceal unreported income (deemed admission number 43), petitioner Jean-Marie Chapoteau's conviction for conspiracy to import, possess, and distribute large amounts of cocaine (deemed admissions numbers 44 through 47), and his use of safe deposit boxes in false names to conceal drug *55 trafficking proceeds (deemed admission number 48). Respondent may use circumstantial evidence to carry his burden of proving fraud. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). In Bradford v. Commissioner,796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Court listed several indica of fraud. Of the indica listed, the following are present in the instant case: understatement of income; inadequate records; concealing assets; failure to cooperate with tax authorities; illegal conduct; cash dealings; and failure to make estimated payments. Construing the deemed admissions in a manner most favorable to petitioners, as we must, and in view of respondent's burden of proof ( Naftel v. Commissioner, supra at 529), we find that those portions of the underpayments which stem from failure to report income from "narcotics trafficking" (deemed admission number 56) are attributable to fraud, while *56 the balance of the underpayments are not attributable to fraud. [6] We further find that both petitioners possessed fraudulent intent with respect to taxable year 1985. Thus, the deemed admissions justify summary judgment upholding the additions sought by respondent under section 6653(b)(1). Section 6653(b)(2), however, authorizes an addition consisting of 50 percent of the interest accruing on "the portion of the underpayment * * * that is attributable to fraud." Because we have found that only certain portions of the underpayments are attributable to fraud, respondent has not established that the additions should be computed as if the entire underpayments are due to fraud. Thus, respondent is not entitled to summary judgment on that issue. Finally, petitioners have offered no proof or argument suggesting that the section 6661 additions should not be imposed. Because *57 the deficiencies that we uphold qualify as "substantial understatements" as defined in section 6661(b), summary judgment upholding the section 6661 additions is warranted. In sum, we deny petitioners' motion for withdrawal of deemed admissions and partially [7] grant respondent's motion for summary judgment. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. Petitioner Marilyn Schnell Chapoteau has submitted an affidavit under that name. We have, therefore, ordered that the caption, which previously named her Marilyn Schnell, be corrected as permitted by Rule 63(e) of the Tax Court Rules of Practice and Procedure.↩
2. The deficiencies and additions for 1983 and 1984 were determined against petitioner Jean-Marie Chapoteau. For 1985, petitioners filed a joint income tax return, and the deficiency and additions for 1985 were determined against both petitioners in a separate statutory notice of deficiency. ↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. Plus 50 percent of the interest on the deficiency under section 6653(b)(2).↩
*. Plus 50 percent of the interest on the deficiency under section 6653(b)(2).↩
4. In that petitioners resided in New York when they filed their petition in the instant case, venue for appeal lies in the Second Circuit.↩
5. For taxable year 1985, respondent moved that we uphold a deficiency of $ 8,749, although respondent's answer seeks $ 7,045. The deemed admissions support the lower amount.↩
6. We take respondent's motion filed at the calendar call as a concession that he relies solely upon the deemed admissions and has no further evidence with respect to the extent to which the balance of the underpayment (i.e., that portion that is not↩ attributable to narcotics trafficking) is due to fraud.
7. Because of the concession referenced in the preceding footnote, we will order a Rule 155 computation in the order which we will issue partially sustaining respondent's motion.↩